IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-CV-226-FL

| | | |
|---|---|---|
| BRYAN GOODMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Bryan Goodman ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for supplemental security income benefits ("SSI") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 17, 19). Each party filed a memorandum in support of its motion. (D.E. 18, 20). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Public D.E. dated 15 May 2015). For the reasons set forth below, it will be recommended that plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further proceedings.

I.  **BACKGROUND**

A.  **Case History**

Plaintiff, who was born in 1991, received SSI based on disability as a child. Transcript of Proceedings ("Tr.") 19. When he attained age 18, he was required to have his eligibility for

these benefits redetermined under the rules for determining disability in adults. *See* 42 U.S.C. § 1382c(a)(3)(H)(iii); Tr. 1-21.

On 25 January 2010, plaintiff was found to be no longer disabled as of 1 January 2010. Tr. 19. This determination was upheld upon reconsideration, and a request for hearing was timely filed. Tr. 19. On 5 March 2013, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, one of his aunts, and a vocational expert testified.[1] Tr. 37-80. The ALJ issued a decision denying plaintiff's claim on 24 May 2013. Tr. 19-27. Plaintiff timely requested review by the Appeals Council. Tr. 15. The Appeals Council denied the request on 15 August 2014. Tr. 1-4. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 16 October 2014, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5)).

### B.     Standards for Disability

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment

---

[1] Plaintiff appeared for a hearing on 12 July 2013, but he did not have proper identification with him, and the ALJ advised him of his right to representation and continued the hearing. Tr. 33-36.

as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such

3
Case 7:14-cv-00226-FL   Document 22   Filed 11/09/15   Page 3 of 15

as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such

impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 21 years old on the date of the hearing. *See* Tr., *e.g.*, 26 ¶ 6; 82 § 4; 91 ¶ 9.[2] The ALJ found that plaintiff had a limited education, being one test short of completing his GED. Tr. 26 ¶¶ 4, 7.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step two[3] that since 1 January 2010 plaintiff had one medically determinable impairment that was severe within the meaning of the Regulations: mild mental retardation. Tr. 21 ¶ 2. He found expressly that plaintiff's attention deficit-hyperactivity disorder ("ADHD") was non-severe, citing his testimony that he had not taken medication for it in two years and prior medical records stating that it was well controlled with medication. Tr. 21 ¶ 2.

At step three, the ALJ found that since 1 January 2010 plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings. Tr. 22 ¶ 3. As part of his analysis, the ALJ found that plaintiff had moderate difficulties in concentration, persistence, or pace. Tr. 23 ¶ 4.

The ALJ next determined that since 1 January 2010 plaintiff had the RFC to perform "a full range" of work at all exertional levels, subject to the limitation that he "perform simple, routine, and repetitive tasks, in that he can apply commonsense understanding to carry out oral, written, and diagrammatic instructions." Tr. 23 ¶ 4. At step four, the ALJ found that plaintiff

---

[2] The ALJ misstates at one point the date on which plaintiff became 18. *See* Tr. 21 ¶ 1.

[3] While the first step of the analysis is to consider whether a claimant is performing substantial gainful activity, this step is not used for redetermining disability at age 18. 20 C.F.R. § 416.987(b).

had no past relevant work. Tr. 26 ¶ 5. At step five, the ALJ accepted the testimony of the vocational expert and found that since 1 January 2010 there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of hand packager, linen sorter, and office cleaner. Tr. 26-27 ¶ 9. The ALJ accordingly concluded that plaintiff's disability ended on 1 January 2010 and that plaintiff had not become disabled again since that date. Tr. 27 ¶ 10.

### D. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based

on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. DISCUSSION

Plaintiff contends that the ALJ's decision should be reversed and SSI awarded or, alternatively, that this case be remanded for a new hearing on the grounds that the ALJ erroneously determined that plaintiff did not meet Listing 12.05C for mental retardation. The court agrees.

### A. Listings Generally

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id.* § 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 416.925(c)(5). To

establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. & recomm. adopted by* Order (22 May 2012) (D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

### B. ALJ's Determination regarding Listing 12.05C

To satisfy Listing 12.05C,[4] a claimant must meet three requirements. First, he must first satisfy the introductory diagnostic description for mental retardation. *See* Listing 12.00A.

---

[4] Listing 12.05 reads in relevant part:

Specifically, the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05. General intellectual functioning is defined by the intelligence quotient ("IQ") obtained using one or more of the standardized, individually administered intelligence tests. *See* DSM-IV-TR 41.[5] Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." *Id.* at 42. Areas in which deficits in adaptive functioning may exist include "communication, self-care, home living, social/inter-personal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)).

In addition to the diagnostic description, a claimant must satisfy the two requirements relating to the severity of the mental retardation. One is that the claimant must have a "valid verbal, performance, or full scale IQ of 60 through 70." Listing 12.05C. In addition, the

---

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . . .
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Listing 12.05C.

[5] "The DSM is widely recognized as the authoritative reference used in diagnosing mental disorders." *United States v. Wooden*, 693 F.3d 440, 452 n.4 (4th Cir. 2012) (internal quotation marks omitted). "The definition of M[ental] R[etardation] we [*i.e.*, the Social Security Administration] use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations," including the definition in the DSM. *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018–01, 2002 WL 661740, at 20022 (Soc. Sec. Admin. 24 Apr. 2002). The court notes that the current version of the DSM ("DSM-V"), which was published five days before the date of the ALJ's decision in this case, has replaced the term "mental retardation" with "intellectual disability." DSM-V 33 (18 May 2013).

claimant must have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

An impairment satisfies this latter requirement if it is severe within the meaning of the Regulations. *See Reynolds v. Colvin*, No. 6:13-CV-22604, 2014 WL 4852242, at *16 (S.D.W. Va. 19 Aug. 2014) ("[A]n additional severe impairment or combination of impairments will automatically establish the third prong of section 12.05C, as 'the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities.'" (quoting *Luckey v. U.S. Dep't of Health & Human Servs.,* 890 F.2d 666, 669 (4th Cir. 1989))), *rep. & recomm. adopted by* 2014 WL 4852250, at *6 (29 Sept. 2014). An impairment is considered severe within the meaning of the Regulations if it imposes more than a minimal limitation on a claimant's physical or mental ability to do basic work activities. *See* Soc. Sec. Ruling 85–28, 1985 WL 56856, at *3 (1 Jan. 1985) (providing that an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"); *see also* 20 CF.R. § 416.920(c) (providing that an impairment is severe only if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities"). The severity inquiry is a *de minimis* screening device to eliminate meritless claims. *See*, *e.g.*, *Hammond v. Colvin*, Civ. No. SAG–10–0499, 2013 WL 141144, at *2 (D. Md. 9 Jan. 2013).

In short, then, the three requirements for satisfaction of Listing 12.05C are the adaptive functioning requirement, the IQ requirement, and the additional impairment requirement. Plaintiff contends that the ALJ found that he did not satisfy any of these requirements and that

the ALJ erred in his determination as to each of them.  The court will address the requirements in turn below.

### 1. Adaptive Functioning Requirement

The ALJ found explicitly that "the evidence of record does not demonstrate deficits in adaptive functioning before age 22." Tr. 22 ¶ 3.  Plaintiff argues that this finding is erroneous for two reasons.  First, he contends that it is based on cherry-picked evidence and thereby fails to take into account other evidence showing plaintiff to have much greater functional limitations.  Second, he argues that the finding is inconsistent with the ALJ's determination that plaintiff has the severe impairment of mild mental retardation because that determination presumes plaintiff had deficits in adaptive functioning before age 22.

To her credit, the Commissioner candidly acknowledges that these contentions have merit:

> The Commissioner acknowledges that the ALJ's finding of no deficits in adaptive functioning is arguably inconsistent with the ALJ's finding of a severe impairment of mild mental retardation. (Tr. 21-22.)  *See Radford v. Astrue*, No. 5:08-cv-421-FL, 2009 WL 1675958 (E.D.N.C. Jun. 10, 2009) (attached) ("[T]he ALJ's finding of no deficits in adaptive functioning arguably contradicts his finding of mild mental retardation." (citations omitted)).  The Commissioner also acknowledges that the ALJ appears to have misread or overlooked some of the evidence in rendering this finding.  *See* [D.E.] 18 [Comm'r's Mem.] at 7-9 (setting forth misread and overlooked evidence).

(Comm'r's Mem. 6 n.3).

The court concludes that the ALJ's finding on the adaptive functioning requirement is erroneous on both grounds alleged by plaintiff.  This deficiency alone warrants remand of this case.

10

Case 7:14-cv-00226-FL   Document 22   Filed 11/09/15   Page 10 of 15

### 2. IQ Requirement

Plaintiff alleges that the ALJ found that he does not satisfy the IQ requirement. He refers to the following finding by the ALJ: "In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Tr. 22 ¶ 3.

Plaintiff's contention is based on a misreading of the finding. Read in context, the finding signifies that the IQ and additional impairment requirements in combination, as opposed to individually, are not satisfied. The ALJ makes clear that he found plaintiff to satisfy the IQ requirement. Indeed, immediately after the foregoing finding, the ALJ states:

> The claimant in August 2001 earned IQ scores of 63 verbal, 72 performance, and 65 full scale (Ex. 13F). Testing at the January 2010 consultative examination yielded similar results, with IQ scores of 67 verbal, 73 performance, and 67 full scale (Ex. 3F).

Tr. 22 ¶ 3. The ALJ makes no finding that any of these scores are invalid, nor do the evaluators who obtained them. *See* Tr., *e.g.*, 317 ("[Plaintiff gave a good faith effort today [5 Jan. 2010] . . . ."); 391 (stating that IQ scores obtained on 21 Aug. 2001 were within the 95% confidence interval and that plaintiff showed satisfactory effort and behavior during the testing session). The court concludes that the ALJ found that plaintiff met the IQ requirement and that this finding is supported by substantial evidence.

### 3. Additional Impairment Requirement

The ALJ found expressly that plaintiff did "not hav[e] another physical or other mental impairment imposing an additional and significant work-related limitation of function." Tr. 22 ¶ 3. The ALJ did not provide an explanation specifically addressing this finding. The court finds that the ALJ erred in not doing so.

As noted, the ALJ found that plaintiff moderate difficulties in concentration, persistence, or pace. Plaintiff contends these difficulties imposed on him an "additional and significant work-related limitation of function" and that this limitation arose from the additional impairment of his ADHD. The ALJ does not reconcile his finding on the additional impairment requirement with his determination on concentration, persistence, or pace.[6]

One conceivable rationale is that plaintiff's concentration-related difficulties, whatever their cause, did not impose upon him a "significant work-related limitation of function." Such a rationale would appear erroneous. Moderate difficulties in these areas would seemingly impose more than a minimal limitation on a claimant's mental ability to do basic work activities, thereby making any impairments causing such difficulties severe ones. *See* Soc. Sec. Ruling 85–28, 1985 WL 56856, at \*3. A severe impairment satisfies the additional impairment requirement. *See Luckey*, 890 F.2d at 669.

An alternative rationale is that, whether or not the concentration-related difficulties impose on plaintiff a significant work-related limitation of function, such a limitation is attributable to his mental retardation. Under this rationale, there is no "*additional* work-related limitation of function" and not "*another* physical or other mental impairment" beyond the mental retardation imposing the concentration-related limitation, as required by Listing 12.05C. The Commissioner argues that this was most likely the ALJ's rationale.

In support, she points to the ALJ's explanation of his determination on plaintiff's concentration, persistence, or pace. It reads:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. At the January 2010 consultative examination, the claimant was alert and conversant with intact thought processes. However, he had some relative weaknesses with auditory alertness, and instructions were repeated on several

---

[6] As plaintiff indicates, the ALJ also does not reconcile his non-severity finding on plaintiff's ADHD with his determination on his concentration-related difficulties.

> occasions. Testing revealed below average psychomotor speed and difficulties with tasks requiring language skills, word knowledge, and abstract verbal reasoning (Ex. 3F).

Tr. 23 ¶ 3. The Commissioner contends that these "findings suggest that the ALJ based the concentration limitation more on Plaintiff's intellectual limitations than on ADHD, particularly in light of the ALJ's . . . reasoning that Plaintiff's ADHD was well-controlled when he took his medications." (Comm'r's Mem. 8).

These findings do not, of course, actually state that the concentration-related difficulties are based on plaintiff's mental retardation. Nor, in the court's judgment, do they even imply that the concentration-related difficulties are based on plaintiff's mental retardation. They simply do not address the issue.

Indeed, the Commissioner herself does not argue that these findings definitively establish mental retardation as the basis of the ALJ's determination on plaintiff's concentration-related difficulties, but rather, as indicated, that they merely "suggest" that determination was based "more on" the mental retardation than the ADHD. (*Id.*). Remarkably, the Commissioner's use of the "more on" formulation seems to assume that the ALJ did base his determination on plaintiff's concentration-related difficulties, in part, on plaintiff's ADHD. If the ALJ did, then the ADHD would arguably satisfy the additional impairment requirement. Ultimately, though, the Commissioner is left to speculate as to the basis of the ALJ's determinations on plaintiff's concentration-related difficulties and the additional impairment requirement, just as the court is.

The report on the examination to which the ALJ refers does not provide the needed clarity. It diagnosed plaintiff with both mild mental retardation, identified as "primary," and ADHD combined type, identified as "secondary," as well as allergies and probable

developmental delays, identified as "co-primary." Tr. 317. The report does not specify to which of these impairments the limitations referenced by the ALJ are attributable. *See* Tr. 317.

The ALJ's failure to clearly explain the basis for his finding that plaintiff did not satisfy the additional impairment requirement precludes the court from determining whether that finding is supported by substantial evidence and based on proper legal standards. Remand is accordingly required on this further ground.

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 17) for judgment on the pleadings be GRANTED, the Commissioner's motion (D.E. 19) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 23 November 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

This 9th day of November 2015.

_____
James E. Gates
United States Magistrate Judge